UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LIBERTY MUTUAL INSURANCE CO.                CIVIL ACTION

v.                                          NO. 06-0265

NATIONAL RAILROAD PASSENGER                 SECTION "F"
CORPORATION d/b/a AMTRAK, ET AL.

ORDER AND REASONS

Before the Court is a motion to dismiss by the State of Louisiana through the Department of Transportation and Development ("DOT"). For the reasons that follow, the motion is DENIED.

Background

In February 2005, an Amtrak passenger train collided with a truck, killing its occupants. The victims, Dan L. Warren and Tyler Davis, employees of Red Simpson, Inc., were working as linemen, doing roadwork in Tangipahoa Parish. Warren, the driver of their employer's utility truck, began to cross the railroad grade crossing, which was owned by Illinois Central Railroad Company. The truck collided with or was struck by a northbound Amtrak passenger train being operated by Merville Cheatwood and James Ivy, Amtrak engineers.

1

Illinois Central owns and operates the tracks and right-of-way used by Amtrak's train.  Amtrak uses the tracks pursuant to an operating agreement with the railroad company.  The operating agreement allows Amtrak to use the tracks, but requires Amtrak to indemnify and hold Illinois Central harmless for any claims resulting from collisions involving Amtrak's trains on the tracks.

Three civil actions are pending in this Court as a result of the incident.

A.   The <u>Liberty Mutual Insurance Company</u> Suit, No. 06-0265

The first-filed <u>Liberty Mutual</u> suit is a subrogation suit by the worker's compensation insurer of the decedents' employer for recovery of approximately $180,000 in compensation benefits allegedly paid to the decedents' beneficiaries.  Liberty Mutual has named Amtrak and Illinois Central as defendants.  Liberty Mutual further bases its claims upon improper crossing signage and poor crossing maintenance, and on the theory that the crossing is defective.

Amtrak removed the action to this Court pursuant to 28 U.S.C. § 1441(a), based on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1349, as well as diversity jurisdiction under 28 U.S.C. § 1332.  Amtrak also asserted a counterclaim against Liberty Mutual, the vehicular liability insurer of the decedents' employer, for damages and clean-up costs Amtrak accrued as a result of the collision.

B.   The <u>Kirsten Ray</u> Suit, No. 06-1886

The <u>Kirsten Ray</u> suit, which is consolidated with the <u>Liberty Mutual</u> suit, is a wrongful death lawsuit prosecuted by the tutrix of decedent Warren's two minor children.  Ray sued Amtrak and Illinois Central, as well as the DOT, the Parish of Tangipahoa, the City of Independence, and the Amtrak engineers, James Ivy and Merville Cheatwood, alleging that the defendants' negligence caused the accident.  Amtrak eventually removed the suit to this Court pursuant to 28 U.S.C. § 1441(c).[1]

C.   The <u>Carson Davis</u> Suit, No. 06-1888

<u>Carson Davis</u>, like <u>Kirsten Ray</u>, is a wrongful death suit.  The plaintiff, Carson Davis, is the father of the passenger of the utility truck, Tyler Davis.  Davis did not sue Amtrak directly.  Rather, he sued the Amtrak's employee, James E. Ivy, as well as Illinois Central and the Parish of Tangipahoa.

All motions to remand to state court were denied on August 8, 2006.  The State of Louisiana through DOT now moves to dismiss the claims against it, invoking its sovereign immunity.  (DOT is a

---

[1]   Initially, Amtrak was not able to remove the Kirsten Ray suit because it could not obtain the consent of its "properly named and served" co-defendants within the thirty-day removal period.  When Ray amended her petition to substitute Illinois Central and dismiss the Canadian National Railway Company, Illinois Central answered and asserted a third-party demand against Amtrak for contractual indemnity based upon the language of their operating agreement. Deeming the indemnity claim as separate and independent of the plaintiff's main demands, Amtrak removed the action to this Court.

named defendant in the Kirsten Ray suit only.)

I.

A.  Federal Rules of Civil Procedure

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).  The complaint must be liberally construed in the plaintiff's favor and all facts pleaded in the complaint must be taken as true.  See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986).  This Court cannot dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of  facts in support of his claim which would entitle him to relief."  Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The same standard of review applies to motions to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction.  See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003).  A court may find a lack of subject-matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must show that jurisdiction exists. Id. at 161.

Rule 17(b) of the Federal Rules of Civil Procedure provides that in instances other than those involving an individual or a corporation, the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." As such, this Court must apply Louisiana law to determine DOT's capacity to be sued.

B.  Sovereign Immunity

The law of sovereign immunity, which is derived from the Eleventh Amendment of the Constitution and considerations of federalism, bars all individuals from suing a State for money damages in federal court. Frew ex rel. Frew v. Hawkins, 540 U.S. 432, 437 (2004); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Ussrey v. Louisiana, 150 F.3d 431, 434 (5th Cir. 1998). States may, however, waive their sovereign immunity. Id.

II.

Rule 17(b) of the Federal Rules of Civil Procedure provides that in instances other than those involving an individual or a corporation, the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  As such, Louisiana law applies in determining DOT's capacity to be sued by Kirsten Ray for negligence.  While Article 12 of the Louisiana Constitution of 1974 declares, "Neither the state, a state agency, or a political subdivision shall be immune from suit and liability in contract or for injury to person or property," Louisiana R.S. 13:5106 provides that "[n]o suit against the state, state agency, or political subdivision shall be instituted in any court other than a Louisiana state court."  Thus, Louisiana has not waived its sovereign immunity under the Eleventh Amendment and cannot be sued by Ray in this Court.

The Eleventh Amendment does not simply bar suits against the Sovereign, but also against a State's alter egos.  Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 185 (5th Cir. 1986); Kenyatta-Bean v. Housing Auth. of New Orleans, No. Civ.A. 04-2592, 2005 WL 3543793, at *2 (E.D. La. Nov. 18, 2005) (Lemmon, J.).  "Whether an entity is covered by a State's Eleventh Amendment immunity turns on the entity's (1) status under state statutes and case law, (2) funding, (3) local autonomy, (4) concern with local or statewide problems, (5) ability to sue in

its own name, and (6) right to hold and use property." Champagne, 188 F.3d at 313. The Champagne court has concluded that those factors "suggest that all Louisiana executive departments have Eleventh Amendment immunity." Id. DOT is undeniably an alter ego of the State of Louisiana, is immune from suit before this Court, and the parties do not make an issue of this.

Ray originally filed her suit in a Louisiana state court, and the matter was removed to this Court. The case included both federal and state law claims, but because the original federal jurisdiction granted by Congress under the Federal Railroad Safety Act of 1970 preempted state law claims,[2] the direct claim against Amtrak prompted this Court to find that "the Federal character permeate[d] the whole case, including the individual defendants as well as the [federal] corporation [Amtrak]." Order and Reasons, August 2, 2006 (quoting In re Dunn, 29 S.Ct. 299, 301 (1909)). Therefore, this Court did not exercise its discretion under 28 U.S.C. § 1441(c) to remand the state law claims. The State of Louisiana's sovereign immunity was not at issue in that decision.

But 28 U.S.C. § 1447(c) states, "[i]f at any time before final judgment it appears that the district court lacks subject

---

[2] See CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 661 (1993) (determining that 45 U.S.C. §§ 421-447 preempts state law claims).

7

matter jurisdiction, the case shall be remanded." The Court recognizes that it does not have subject matter jurisdiction over DOT, an agency of a sovereign state. Therefore, pursuant to § 1447(c), the state law claim against DOT must be remanded to state court and DOT's motion to dismiss is DENIED.

    New Orleans, Louisiana, September 27, 2006.

        _____
         MARTIN L. C. FELDMAN
        UNITED STATES DISTRICT JUDGE